UNITED STATES CASUALTY COMPANY, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JOAQUÍN CORREA SUÁREZ, JUEZ, demandado; FONDO DEL SEGURO DEL ESTADO, interventor.

*Número:* 2858 *Resuelto:* 4 de marzo de 1963

*Emilio de Aldrey,* abogado de la peticionaria; *Donald R. Dexter* y *R. Rivera Genaro,* abogados del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: La peticionaria United States Casualty Company libró una póliza de seguro para responder de los daños que a terceras personas pudieran causarse con motivo de la operación de un automóvil Chevrolet destinado al transporte público de pasajeros, con tablilla Núm. P-47-337, propiedad de Guillermo Ramírez, limitándose la responsabilidad pública de la aseguradora hasta $925.00 para una persona y hasta $2,500.00 para un accidente. El 9 de noviembre de 1956 estaba en vigor el seguro.

En la mañana de ese día el automóvil asegurado transitaba por la Carretera Estatal Núm. 2, tramo del Barrio Jacaná de Yauco, conduciéndolo el chófer Antonio Vázquez Millán y transportando como pasajeros a René Feliú Milán, Luis A. Santana Rivera, Miguel A. Rosado Torres, Nelson Morales Cordero y Pedro López Torres. En esos momentos también transitaba por el mismo tramo de carretera, en dirección contraria, otro automóvil marca Chevrolet, tipo "pick-up", propiedad de la Autoridad de las Fuentes Fluviales de Puerto Rico, conducido por su chófer y empleado Silvestre Nieves Vázquez y en el que iba otro empleado de dicha entidad llamado Jovino Luna Torres.

Entre ambos automóviles ocurrió un choque, del cual resultaron lesionados el chófer Antonio Vázquez Millán y los cinco pasajeros del automóvil P-47-337, propiedad de Guillermo Ramírez, y, además, los empleados de la Autoridad, Silvestre Nieves Vázquez y Jovino Luna Torres.

El día 22 del mismo mes de noviembre Guillermo Ramírez y su chófer Antonio Vázquez Millán remitieron a la compañía aseguradora un informe sobre el accidente. Por gestiones de esa entidad aseguradora se le envió a ella el 15 de enero de 1957 copia del informe de la Policía Estatal sobre el accidente, en el cual aparecían como entre las personas lesionadas Silvestre Nieves Vázquez y Jovino Luna Torres, en adición a los cinco pasajeros y el chófer del automóvil público de Ramírez.

En alguna fecha posterior al accidente, la Autoridad informó al Fondo del Seguro del Estado en lo que a sus empleados Silvestre Nieves Vázquez y Jovino Luna Torres se refería. En el Fondo del Seguro fueron tratados ambos empleados. Jovino Luna Torres como resultado del accidente recibió laceraciones y contusiones en diferentes partes del cuerpo y una herida en la mejilla izquierda la cual dejó una cicatriz deprimida en sentido oblicuo, causándole un 20 por ciento de desfiguración; Silvestre Nieves Vázquez sufrió una contusión en la rodilla izquierda que le ocasionó una incapacidad parcial permanente consistente en la pérdida de un 15 por ciento de las funciones fisiológicas de la pierna izquierda por la rodilla.

Por jornales perdidos, hospitalización y asistencia médica del empleado Jovino Luna Torres el Fondo del Seguro incurrió en un desembolso de $111.50. Y en el caso de Silvestre Nieves Vázquez, por la suma de $1,342.81. En el caso de Jovino Luna Torres el Administrador del Fondo dictó una resolución que quedó firme el 12 de junio de 1957 y otra en el caso de Silvestre Nieves Vázquez que quedó firme el día 20 de junio de 1957.

A fines del año 1956 los pasajeros que iban en el automóvil público de Guillermo Ramírez llamados René Feliú Milán, Luis A. Santana Rivera, Miguel A. Rosado Torres, Nelson Morales Cordero y Pedro López Torres presentaron en el Tribunal Superior, Sala de Ponce, una reclamación contra Guillermo Ramírez y su aseguradora United States

Casualty Company reclamándole los daños y perjuicios sufridos por ellos con motivo del accidente mencionado y, a mediados de 1957 Antonio Vázquez Millán, ante la Sala de Ponce del mismo tribunal, radicó también una acción sobre daños y perjuicios y con motivo del mismo accidente, contra su patrono Guillermo Ramírez y la compañía aseguradora. En ambas acciones fue emplazada la United States Casualty Company como parte codemandada, y en sus archivos se abrió para cada reclamante una especie de expediente. El día 9 de septiembre de 1957 Guillermo Atiles Moréu, en su carácter de Administrador del Fondo del Seguro del Estado como subrogado en los derechos de los obreros Silvestre Nieves Vázquez y Jovino Luna Torres, acogiéndose a lo dispuesto en el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, tal como fue enmendado por la Ley Núm. 70 de 1955, radicó una acción ante la Sala de San Juan del Tribunal Superior contra Guillermo Ramírez, Antonio Vázquez Millán y United States Casualty Company solicitando sentencia por $5,454.31, para ser distribuida en la siguiente forma: Para el Fondo del Seguro del Estado, $1,454.31, para el obrero Jovino Luna Torres, $2,000, y para el otro obrero Silvestre Nieves Vázquez, $2,000.

El día 25 de septiembre de 1957, es decir, dieciséis días después de radicada la demanda del Fondo del Seguro del Estado antes mencionada, las seis personas demandantes ante la Sala de Ponce del Tribunal Superior y la United States Casualty Company transigieron las reclamaciones interpuestas ante dicha Sala con motivo del accidente de automóviles del 9 de noviembre de 1956, pagándoles a ellos y en distintas sumas los daños sufridos hasta la suma de $2,500.00, importe total por un accidente de la póliza al principio relacionada.

La aseguradora United States Casualty Company aparece emplazada en el pleito sobre daños y perjuicios incoado contra ella por el Administrador del Fondo del Seguro del Estado ante la Sala de San Juan del Tribunal Superior el 23 de octubre de 1957. Presentó su contestación en el caso

el 18 de noviembre siguiente alegando como defensas especiales las siguientes:

"DEFENSAS ESPECIALES.— 1. Que la póliza cubriendo el vehículo a que se refiere la demanda contiene un límite de responsabilidad pública de $925.00 para una persona y $2,500 para un accidente.

"2. Que con motivo de este mismo accidente, se radicaron ante el Tribunal Superior de Ponce, una por el Lcdo. Luis Negrón López a nombre de los lesionados René Feliú Milán, Nelson Morales Cordero, Pedro López Torres, Luis A. Santana Rivera y Miguel A. Rosado Torres, Civil Núm. Cs-56–2587, daños y perjuicios, y otra demanda por el Lcdo. S. L. Lagarde Garcés, a nombre de Antonio Vázquez Millán, civil Núm. 57–1716, daños y perjuicios, cuyas reclamaciones fueron transigidas por el montante total de la póliza.

"3. Que la compañía de seguros codemandada no tuvo conocimiento en ningún momento de que existieran otros reclamantes en relación con el accidente en que fueron transigidos los casos antes citados.

"4. Que la transacción a que se hace referencia fue hecha de buena fe y debido a la seriedad de las lesiones hubo necesidad de agotar el montante total del límite de la póliza.

"5. Que habiéndose agotado el límite total de la póliza, la compaña no podría hacer pago alguno con respecto a las reclamaciones, que ahora se traen en la demanda a que se contrae el caso de epígrafe.

"POR TODO LO QUE la compareciente respetuosamente solicita de este Hon. Tribunal se sirva dictar sentencia declarando sin lugar la demanda con imposición de las costas, gastos y honorarios de abogado a los demandantes."

Después de varios incidentes, el caso fue señalado para juicio, y al ser llamado para esos fines, las partes convinieron en que la vista se celebraría únicamente sobre la procedencia de las defensas formuladas por la compañía aseguradora, es decir, en síntesis, si la aseguradora estaba obligada a reparar los daños causados a los obreros de la Autoridad, Silvestre Nieves Vázquez y Jovino Luna Torres, no obstante haberse agotado el límite de la póliza mediante los pagos hechos a los pasajeros lesionados que demandaron ante la Sala de

Ponce del Tribunal Superior. Celebrada la vista y sometida esa cuestión para su determinación, la Sala de San Juan del Tribunal Superior dictó una resolución el 20 de febrero de 1961 declarando "que la codemandada United States Casualty Company es responsable por su actuación respecto a los codemandantes Silvestre Nieves Vázquez y Jovino Luna Torres en las cantidades que pudiera justificar la prueba que en su día desfile de los daños por ellos sufridos en el accidente."

Posteriormente se presentó una moción de reconsideración que fue declarada sin lugar.

Para revisar dicha resolución a petición de la United States Casualty Company expedimos un auto de certiorari.

Sostiene la peticionaria que el Tribunal de instancia cometió el siguiente error:

"Entiende la peticionaria que el Tribunal Superior al dictar la susodicha resolución cometió error por cuanto no hubo prueba alguna ante dicho tribunal de que las transacciones verificadas por la compañía de seguros fueran hechas de mala fe y con el solo y único propósito de perjudicar derechos algunos de otras personas que pudieran tener interés bajo la susodicha póliza de seguros, y erró asimismo dicho tribunal al resolver que a pesar de que el límite de la póliza estaba agotado en su totalidad los demandantes Silvestre Nieves Vázquez y Jovino Luna Torres tienen derecho a obtener indemnización, de ser probada ésta, bajo la misma póliza de seguros que cubría el referido vehículo."

Consideramos acertada la recurrida resolución del Tribunal de instancia. La United States Casualty Company tenía pleno conocimiento de la ocurrencia del accidente y de que entre las ocho personas lesionadas se encontraban los obreros Silvestre Nieves Vázquez y Jovino Luna Torres, por los informes escritos recibidos en noviembre de 1956 y enero de 1957. Por las demandas interpuestas en 1956 y mediados de 1957, ante la Sala de Ponce, suponemos que también tenían informes de las personas relacionadas con el accidente y posiblemente afectadas en alguna forma por el mismo.

Entre otras determinaciones, el Tribunal de instancia, hizo las siguientes:

"Si bien es verdad que la prueba revela que la codemandada United States Casualty Company fue emplazada en las reclamaciones de los codemandantes Silvestre Nieves Vázquez y Jovino Luna Torres en 23 de octubre de 1957 no es menos cierto que ya para septiembre 9 y septiembre 25 se habían abierto en los libros de la codemandada los casos potenciales de reclamación de estos codemandantes.

"A la luz de la prueba desfilada en este caso consideramos que la codemandada United States no ejercitó una cuidadosa consideración de la situación envuelta en la posible reclamación de estos codemandantes cuando hizo la transacción respecto de las demás personas lesionadas en el accidente. Consideramos que las transacciones llevadas a cabo con los reclamantes que representaban los Lcdos. (abogados que representaban a los demandantes ante el Tribunal Superior, Sala de Ponce), debieron haber tenido en consideración para calibrar la responsabilidad de la codemandada y la posible participación sobre el montante total de la póliza que garantizaba y aseguraba el vehículo propiedad de los otros codemandados para de esta manera no haber lesionado derechos claramente conocidos por la codemandada United States Casualty Company. Consideramos que la actitud de la codemandada United States Casualty Company al resolver las transacciones con los demás obreros equivale a una actuación perjudicial y en desconocimiento de derechos claramente reconocibles a los codemandantes de acuerdo con toda la prueba de que disponía dicha codemandada."

Del testimonio del Jefe de la División de Reclamaciones de la peticionaria resulta que la "razón especial" que tuvo la compañía para transigir con los pasajeros y el chófer y no con los obreros de la Autoridad fue que "los primeros hicieron el 'approach', se adelantaron y según vinieron se atendieron las reclamaciones."—T. 29. Por otra parte, la propia declaración de este alto empleado de la peticionaria demostró la poca diligencia que se despliega por ella en el curso de la investigación de los casos cubiertos por esta clase

de seguros y en el cumplimiento de los deberes que las pólizas le impone.(¹)

Dentro de las circunstancias del presente caso no encontramos base en derecho para resolverse que el pago hecho a los que primeramente reclamaron liberaba a la compañía aseguradora de compensar, dentro del límite de su póliza, a todas las personas lesionadas como resultado de la operación del automóvil asegurado. Aun cuando hubiera actuado de buena fe, esto no puede servir de motivo para justificar el incumplimiento del seguro respecto a los obreros de la Autoridad de las Fuentes Fluviales, quienes, por disposición del citado Art. 31 no podían demandarla, por sí mismos, una vez que el Administrador del Fondo inició judicialmente la reclamación, como subrogado en los derechos de ellos. Si no hubiera reclamado dicho Administrador, la acción de ellos duraba hasta septiembre de 1958.

(¹) De las páginas 38 y 39 de la Transcripción citamos lo siguiente:

"P. ¿En su investigación usted vio los testigos del carro que tuvo la colisión con el carro público?

"R. No, señor.

"P. ¿No los investigó nunca? ¿Les tomó declaración?

"R. No, señor.

"P. ¿A ningún testigo?

"R. No, señor.

"P. Debo entender que esas transacciones que se hicieron con los clientes que representaba el compañero Negrón López y el compañero Lagarde Garcés, ¿usted las hizo sin tomar declaraciones y sin hacer una investigación con los testigos de cómo ocurrió el accidente?

"R. Correcto.

"P. O sea, que independientemente de que el carro asegurado por ustedes o el otro vehículo que intervino en la colisión, o los otros dos vehículos, ¿cuál fue o no responsable, usted no tiene conocimiento de eso?

"R. El tribunal sabe . . .

"P. Conteste la pregunta.

"R. Había que pagarlo independientemente hubiera responsabilidad o no.

"P. Yo no lo interpreto así. Nada más.

*Lcdo. Aldrey:*

"P. Usted dice que no se hizo investigación, ¿qué procedimiento se seguía bajo esta póliza en esta clase de casos, con respecto a las reclamaciones?

"R. No podemos hacer investigaciones, porque de hacer investigaciones en tantos casos que se nos presentaban, necesitaríamos un 'staff' de cincuenta empleados."

*Deberá confirmarse la resolución recurrida fechada el 20 de febrero de 1961, anularse el auto aquí expedido, y ordenarse que continúe la peticionaria United States Casualty Company como parte codemandada, en el pleito principal Núm. CS-57-5217, cuya tramitación se continuará, determinándose en su día la responsabilidad de dicha codemandada bajo los términos de la póliza, y, en su caso, la participación en dicha póliza que corresponda a cada litigante en este pleito iniciado por el Administrador.*